Moncure, P.,
delivered the opinion of the court.
*385 The court is of opinion that the circuit court did not err “in holding the executor chargeable with the value of the slaves, John, Frederick, Polly and Sally, and with interest thereon.” It was the plain duty of the executor to sell them. The first clause of the will expressly declares, that “After my death, as soon as convenient, I desire my executor to advertise and sell my whole estate, both real and personal, on such reasonable credit as he may think best for the interest of my estate, and out of the proceeds of such he pay all my just debts and funeral expenses.” Accordingly, very soon after the probate of the will and the qualification of the executor, and during the same month, to wit: on the 22d day of November 1859 he sold the slaves at public auction on a credit of six months, when Emmett D. Boaz, residing in the state of Missouri, one of the sons, and five residuary devisees and legatees of the testator, and also testamentary guardian of the children of David Boaz, a deceased son of said testator, the said children, also residing in the said state, became the purchaser of the said slaves, through the agency of the said executor, at the price of $4,955. It was the plain duty of the executor to demand and take of the purchaser bond with good surety for the purchase money. That the purchaser was a man of ample means, if he really was so (though that fact does not appear from the record), makes no difference. It would make none if the purchaser had resided, in the state of Virginia. It is always the duty of a personal representative to demand and take good security of every purchaser on credit of property of the decedent, wherever the purchaser may reside, and whatever may be his pecuniary circumstances. That the purchaser resides abroad, if it be not a reason for increased strictness in this respect, is certainly no reason for the *386 contrary. When therefore the purchaser in this case failed to comply with the terms of sale, by giving bond with good security for the purchase money, in a reasonable time after the sale, it was the plain duty of the executor to resell the slaves at the risk and loss of. the purchaser. Had he performed this plain duty the estate would have sustained no loss by the transaction, but would have realized the full market value of the slaves at that time. Suppose the executor, though required by the will to sell the testator’s whole estate as soon as convenient after his death, had not sold the slaves at all, but retained them as his testator’s estate, until they perished in his hands by the result of the •war, would he not have been clearly liable to the estate for their value at the time when they ought to have been sold? Was not that in effect the very course which he pursued? To retain and hold the slaves themselves as security, in lieu of that which the law made it his duty to demand and receive, was no legal equivalent therefor. Slaves were a precarious security at best, and especially at that time. They were always liable to loss by sickness, death and running away, and their intrinsic value daily diminished, until, in consequence of the late war, it was wholly destroyed. In that way the value of these slaves was destroyed, and the loss of that value has thus plainly resulted from the neglect of the executor. His liability to indemnify against the consequences of that loss such of the legatees as had no agency in bringing it about cannot be denied. That he was influenced by kind and humane feelings in what he did cannot alter the case. It may excite our sympathy for him, and our regret at his loss, but right and justice must still be done by us, and we must administer the law as it is written. Men may do what they please with their. *387 own, and may justly be commended for their liberality in so dealing. But when they undertake to execute a fiduciary trust for others, and especially infants and others under disability, they must take care to proceed according to the rules of law and equity. It can require no citation of authority to sustain these principles with which we are all familiar.
The court is further of opinion that the circuit court did not err “ in fixing the value of said slaves at the price at which they were sold at the executor’s sale, instead of the sums at which they were appraised at the appraisement the day before.” The presumption is, that they were sold for no more than their market value, and that if they had been resold at the loss and risk of the purchaser, on his failure to comply with the terms of sale, they would have brought the same, or nearly the same, price; and at all events the loss would have been made good by the first purchaser.
The court is further of opinion that the court did not err “in decreeing payment of the shares of the minor plaintiffs directly to them, instead of to their guardians.” The effect ■ and object of the decree, which is merely interlocutory, was to settle the rights of the parties, or some of them. Of course the money will not be paid into the hands of infants; and the court below can yet make any order on that subject which may be necessary to ensure the payment of the money into proper hands. If the appellant has any interest in that question, he might have guarded his interest by a proper motion to the court below before he brought the cause here, and he may guard it by such a motion after the cause goes back.
This court is of opinion that there is no error in the decree of the court below, and that it ought to be affirmed.
Decree arrirmed.